Case No. 20-5088, Center for Biological Diversity, Avalance v. David Lonely Bernhardt, U.S. Secretary of the Interior, et al. Mr. Shannon for the Avalance, Mr. Hellinan for the Avalance. Morning, Counsel. Mr. Shannon, please proceed when you're ready. Thank you, Your Honor. Good morning, and may it please the Court. The primary issue on appeal at this early stage of the proceedings is whether the Center has standing to challenge the defendant's failure to publish the guidelines implementing the Species Status Assessment Program in the Federal Register, as required by Section 4H of the Endangered Species Act. And the Center clearly does here, because the defendant's failure has denied the Center access to information that Section 4H requires the Service to disclose. And there is no reason to doubt the Center's well-pled allegations that this information would help the Center carry out its mission to protect endangered species and their habitats, and its ability to inform both its members and the public. Now, this Court has found, quote, the law is settled that a denial of information qualifies as an injury in fact, where a statute on the claimant's reading requires that the information be publicly disclosed, and there is no reason to doubt their claim that the information would help them. Now, the Court applied this test in Friends of the Animals v. Jewell, A24, F3, 1033, which found that Section 10C of the Endangered Species Act also establishes a statutory right to information. Mr. Shannon, could we take a step back? I understand the Center maintains that this is an informational harm. But the failure to provide notice and comment is generally thought of as a procedural harm. And so if we were to assume that it was a procedural harm, how does your claim pass the test in Summers, the Supreme Court's decision in Summers? So, assuming it was a procedural harm, the requirement on us would then be to show some kind of substantive harm that is attached to that procedural harm. And I think what the defendants are doing here is reading Spokeo very narrowly, and not looking at the fact that Spokeo cited informational injury cases as a substantive harm that is attached to what can be considered a procedural violation, the failure to publish something in the Federal Register or provide notice and comment on it. However, if you look to Summers specifically, that case did not involve informational standing or even organizational standing. It solely involved organizations trying to demonstrate, sorry, did not involve organizational standing or informational injury standing. It solely involved associations. Well, that's what I'm saying. Say, just assuming that I reject the premise that this involves a proper informational claim. If it is simply a procedural harm, can you satisfy the test of Summers? I believe so, Your Honor. I mean, for two reasons. One, there are substantive harms that the Center has accrued because of the service's failure to publish the guidelines implementing the Species Status Assessment Program in the Federal Register. For instance, the Center routinely submits, and this is detailed in our complaints in paragraphs 9 through 12 of JA 9 through 11, petitions for the listing of species as either endangered and threatened. And now those petitions are judged based on the criteria that is established in the SSA framework. That's the criteria on which the service gathers the best available science, and those petitions have to be decided solely on the best available science. So there's a substantive harm there. There's also a substantive harm. I'm sorry, I don't understand. The substantive harm is that it was published on the website instead of in the Federal Register? Yes, Your Honor. And to that point, the publication of just the SSA framework on the website is a far cry from publication in the Federal Register. I mean, as we detail in our reply brief, the Federal Register Act was established exactly to prevent this kind of confusion surrounding the publication of agency guidelines, agency rules, and the like. It was supposed to be one place where individuals could look to understand the guidelines or the regulations, whatever they may be, by which an agency conducts its practices. How is that a harm, though, that is not shared in common with all other groups or individuals that might be interested in this information? How is that harm particularized to the Center? So it's particularized to the Center because not only does the Center currently have listing petitions pending in front of the Court, but the Center, and it's impossible to know this for sure, may submit more listing petitions than any other organization. So the fact that other organizations may also be harmed by the failure to publish the SSA programs and funding guidelines in the Federal Register doesn't deprive the Center also of standing. The Supreme Court looked at this in FEC v. Aikens and said, yes, this harm may be generalized in a certain sense. But because this plaintiff is requesting this information and has been denied access to this information, this plaintiff themselves is also harmed. Well, the FEC Act, though, is very unusual in that it allows a person to challenge a non-enforcement decision of the FEC. That is true, but on the flip side, as this Court has found in the Endangered Species Act in Section 10C and we believe they should find in Section 4H, there's also a requirement to publish these things in the Federal Register. And Congress also provided in the citizen supervision an explicit right to enforce the non-discretionary duties of Section 4, of which Section 4H would be one of them. And we've alleged that they've failed to carry out that discreet non-discretionary duty. I don't know that I... Go ahead. No, no, you go ahead. Please, please. I was going to ask him about... I was going to ask Mr. Shannon about you, about your reliance on friends of animals. Which one, Your Honor? That was a 10C case, which is different from 4H because 10C says that information received by the Secretary as a part of any application shall be made available. Information received by the Secretary as a part of any application shall be made available to the public as a matter of public record at every stage of the proceeding. There's nothing like that in... There's nothing like that in 4H. To me, that shows the problem you've got because under 4H, the only thing your allegation is, is that the agency didn't go through notice and comment rulemaking, but you have the document. You have the framework. We have the framework. There wasn't anything in the... I didn't see anything in your brief that suggested that had the agency gone through notice and rulemaking, there would have been other documents you would have been entitled to. Do you see my point? Respectfully, Your Honor, to your last point, we do plead in our brief that there are other guidelines that may be out there implementing the Species Status Assessment Program based on the service's prior practice of not publishing the guidelines that we allege would be subject to Section 4H's requirements. But this is about the framework, right? The framework is just one example of the guidelines implementing the Species Status Assessment Program. There are two other documents that we allege are guidelines that we detail in our complaint, but the State Representation on Species Status Assessment Team memos... But you have those, right? Those are available. You have them, right? We do now... They're not secret. They're not secret, are they? To be fair, the reason we have them is because we read about the existence of the State Representation Team's memo in an industry newspaper and had to contact the actual reporter who published the story to receive the document. We then sent in a notice of intent to sue for the service's failure over Section 4H to publish that, and also raised other substantive concerns about the memo itself. And then they subsequently provide us not only with a copy of the memo, but issued the clarifying memoranda stepping back some of the statements that they made in the original State Representation on Species Status Assessment Team's memo. So essentially, what we're stuck with right now is a game of whack-a-mole, where we find out about these guidelines through one way or another, either a newspaper story about it or potentially a FOIA request or it comes up in some other context. And then the service says, well, now you have that document, and so you either are no longer injured or you lack redressability, essentially putting us in a catch-22, where we either can't plead with specificity what specific document we think we should be published or can't get redressed because they've now made that document available in some way other than what's required by the statute. But to hold as much would render Section 4H essentially a nullity. And I'm sorry, Your Honor, there was a first part to your question, but if you could refresh my memory. No, it was about — my question was about Friends of Animals and the difference between the two statutes. The statute that issued in Friends of Animals actually required the disclosure of information. The statute at issue here does not. It just requires notice and comment rulemaking. Yeah, thank you, Your Honor. So it is true that Section 10C is distinguishable from Section 4H because it uses the word information, but that's not to say that Section 4 — No, no, no, that's not what makes it distinguishable. It's not just that it uses the word. It says that information received by the Secretary as a part of any application shall be available to the public.  Let me give you an example. I think you would have had a very strong case if you would argue — this is just, you know, if you'd said, look, what we're missing here. We would learn a lot. If they went through notice and comment, agencies have to respond to comments that they get in the notice and comment rulemaking process. And the agency's responses to comments would be extremely helpful for us to understand the agency's position and its strategy. And that's — then it seems to me you would have a good case that there's something more here. In other words, our case law says notice and comment rulemaking, a failure to do that by itself does not confer standing unless there's something more. And the something more would be we need the agency's responses to understand the agency's enforcement strategies. You didn't make that argument. I agree completely, Your Honor. We actually set forth those arguments both in our complaint and in our briefing. You do? Where in the complaint? Would you just show me where? I mean, if you did, fine. I didn't see it. So in the complaint at paragraph 50 and then in our first claim for relief, we note that the service's failure to provide notice on the guidelines leaves basic questions about the program unanswered. That doesn't — that's not what I said. I mean, I read that. I didn't know what you meant when you said that. I didn't understand that. I didn't understand what you meant by that was that we don't have the agency's responses to comments. At the very least, in our prayer for relief, Your Honor, we ask for relief, an order from the district court requiring them to comply with the requirements of Section 4H, which would not only be publication, but an opportunity for notice and comment. And in response to our briefing, stating that notice and comment could provide or alleviate some of the ambiguities and opacities surrounding the SSA program right now, the service responded that they would only need to respond to substantive comments and then assume that none of our comments would be actually substantive. But you're correct in that if the service was actually required to publish the framework, at the very least, and potentially other guidelines — we don't know if there are other guidelines that might be subject to Section 4H at this early stage of the case in the Federal Register and accept notice and comment — that could very well provide us with relief. And I see that I'm moving into my rebuttal time. I'm happy to answer other questions. Otherwise, I will reserve my time for rebuttal. Okay. Thank you, Mr. Shannon. Mr. Halayanan? Good morning, Your Honors. Daniel Halayanan for the Federal Appellees. So I think what the Center is arguing in this case is that they're harmed by the service's compilation of scientific data and pre-decisional documents. But they're not actually challenging any final decision that relies on that information. For example, an action on a petition. They're just claiming that their desire to know more about species status assessments is a cognizable harm. But they don't have a legally protected interest in that, so it's not a sufficient basis to establish standing. There is some question in the appeal about what the appropriate way to view the standing question is here, whether it's an informational rights case, a procedural rights case, or if there's a role for organizational standing. But I think the bottom line is that under sort of any theory of standing, the Center doesn't have a legally protected right to sort of insert itself into how the service is compiling scientific data. And for that reason, it doesn't have a legally cognizable injury and no standing either. And that's why we'd ask the court— What's your response to Mr. Shannon's argument that what's going on here is that they get wind of these documents that they believe should have gone through notice and comment rulemaking. They ask the agency about it, they get the copy, and then they have it, but they haven't solved their underlying problem, which is their view that under the law, these documents should be going through notice and comment rulemaking. He called it a game of whack-a-mole. So I think I have two responses to that. The first is that, you know, of course, if the service uses a species status assessment in reaching a decision, for example, on a Section 4 petition, the service references that as part of the record. So the species status assessment is part of the decision there and can be challenged at that time. So if they want to bring up issues related to how the service is, you know, compiling that species status assessment, there is an opportunity to bring that and seek judicial review. It's just not at this sort of early nebulous stage where they don't have any harm. The second is that it's, of course, the burden on the plaintiff to identify a sort of discrete action that they're seeking to challenge or compel. And I think an allegation that there might be documents out there doesn't yield any kind of concrete, particularized harm to the center that would be enough to establish a case or controversy. I think, you know, it is their burden to explain to the court what it is that they're actually challenging. Mr. Hyland, it seems the government in its brief says that the primary documents that are guidelines, that might be guidelines under 4H are available online. But are there other documents, I guess non-primary documents, that the service hasn't published even online, much less put through notice and comment rulemaking? So I would say as an initial matter that at this stage of the litigation, you know, we're accepting their contention that these documents are guidelines. We wouldn't concede that the framework and so on are necessarily guidelines under Section 4H. But I think what we meant by that in our brief is just that the documents that are the basis of their claim in this case are already available to them. But that's because they're not aware of all the documents that might be informing the agency's decision because you haven't published them or subjected them to notice and comment rulemaking. So I think, you know, there is obviously always going to be an informational imbalance where the government knows all of what it's doing and the plaintiffs are seeking to, you know, obtain judicial review as appropriate where they understand that there has been some violation of law. But again, I would say that, you know, if they think there is a problem with species status assessments and that they're developed in reliance on documents that they think have illegally not gone through notice and comment under Section 4H, then they can challenge a decision by the service that relies on a species status assessment and causes them some harm in some way. And I think that would be the appropriate way of bringing that to the court's attention rather than just sort of alleging generally that there's a sort of programmatic failure to disclose documents. Because I think under cases like Norton against Southern Utah Wilderness Alliance, the courts have been very clear that that's just not the kind of cognizable claim that a plaintiff can bring in an administrative challenge. So if they brought this lawsuit in their other suit, not before us here about the Rio Grande cutthroat trout, you think it might be cognizable in that context where there is a specific species determination? I think it would obviously depend on kind of what they're claiming, but I think that would be a more appropriate way to raise the issue because the species status assessment is at that point, you know, influencing in their turn, in their view, a decision that they object to and that has harmed their interest. So I think, you know, they didn't raise, as I understand it, species status assessment issues in the Colorado case, but if they had brought it there, that would be the place to do it. But when they do that, what they're challenging is the decision. And it's just that the species status assessment plays a role in the decision. So they're indirectly getting at the species status assessment by bringing a challenge to the final decision that's in at least in part predicated on the assessment. That's the way you perceive it happening. I think so. I mean, in the alternative, if there were actually an agency action that they wanted to challenge, they could bring that claim and say a document is illegally defective for failure to go through notice and comment. Like they could challenge the 2016 framework that way, but they'd have to demonstrate an Article III injury that flows from that. And I just don't think they've done that in this lawsuit. What if there were a decision, so where there is a decision that's predicated on the assessment, then you can bring a challenge to the decision. But is it possible that there, if there's a flaw, if they perceive a flaw in the assessment, but it doesn't, but the flaw means that the, that the service decides not to engage in a decision. Then there's no way to challenge the flaw in the assessment that led to the non-decision. So I think if there isn't an agency action that relies on the species status assessment, then if they want to challenge a failure to undergo Section 4H, they would just challenge the document that they think should have gone through notice and comment. Again, I'm not sure if they'd be able to establish standing to do that, but that's just not the issue in this case. Are there any documents that the service has put through notice and comment under 4H? Congress seems to express a pretty firm policy that the criteria the service uses should go through this process. Yes, so the service has undertaken Section 4H notice and comment procedures for guidelines. There were two in 2016, one involving priority status reviews, which is sort of one of the enumerated types of guidelines in Section 4H. That is at 81 Federal Register 49248. And there was also a policy on critical habitat that went through Section 4H notice and comment procedures, and I think that was also 2016. That's at 81 Federal Register 7226. So those are just two examples, but I think, you know, in appropriate circumstances where the service is seeking to adopt a document that fits within the definition of a guideline, it will go through Section 4H notice and comment. So I guess one point I would just like to emphasize is this question about whether this case is properly viewed as a procedural rights case or an informational rights case. We think that ultimately doesn't matter to the outcome of the case. But we do think the court should view it as a procedural rights case because notice and comment statutes are not disclosure statutes. And the informational injury tests have been developed to accommodate the peculiarities of disclosure statutes and the particular interests that Congress is seeking to protect when it adopts a disclosure statute. Whereas a notice and comment statute like Section 4H serves a different purpose. As we know from cases like MCI, which we cited in our brief, notice and comment has the purpose of enhancing an agency's decision making. It's not intended to create a disclosure right. The incidental dissemination of information pursuant to a procedure like notice and comment is not the same thing as a right to disclosure of information as we understand that issue in the informational standing context. And I think on this point, the Wilderness Society against Wray case that we've cited in our briefs from Judge McCune in the Ninth Circuit really has a thoughtful explanation of why it's important to police this boundary. Because I think the consequence of applying informational standing tests to a notice and comment type procedure like the one at issue here is that it kind of blurs the lines on what constitutes a concrete injury in a way that is not contemplated by Summers Against Earth Island Institute. And the cases that follow that, I'm thinking of in particular, the International Brotherhood of Teamsters case from this court, which basically says, you know, in a notice and comment situation, the allegation that an agency is not complying with the procedural requirement, that's just a sheer deprivation of a procedural right in vacuo, which is not enough. And as was being discussed earlier, I don't think that the center here has alleged any concrete harm that flows from the alleged procedural violation of Section 4H here. I don't think, you know, pointing to disclosure online or through a FOIA request as opposed to Federal Register publication can really be conceived of as creating a concrete particularized injury to the center in particular, regardless of, you know, petitions pending, whatnot. The location of publication really is just a procedural requirement and nothing really differentiates the consequences for any particular plaintiff with respect to where it's published. And I think that's the key issue in differentiating procedural rights cases from informational rights cases, is that procedural rights cases are very concerned with generalized grievances being brought to court as Article 3 cases and controversies. And informational rights cases recognize that in some circumstances Congress has identified a harm that might be generalized among the public, but is nonetheless the type of thing that can serve as a concrete injury in support of standing. That's just not the right way to think about notice and comment. So, we would urge the court to conclude that this is a procedural rights case and that the center has failed to establish procedural standing. If the court reaches informational standing, I think their allegations of informational standing fail for essentially the same reason that this is a procedural rights case. There's no entitlement to information or disclosure in Section 4H, unlike Section 10C in the ESA as addressed in the Friends of Animals case, which did have a discrete disclosure provision that required the release of information. So, we would urge the court to affirm on that basis. Unless the court has any other questions? Thank you, Mr. Hlinen. Thank you very much. Mr. Shannon, you have your rebuttal time. Thank you, Your Honor. Briefly, I just want to address Judge Tatel's question before regarding notice and comment. You can look to paragraphs 1 and 3 of the complaint that's on JA 7. And I want to address a couple of points that opposing counsel made. One, he alleges that we're asserting to insert ourselves into this process by which the best available science is compiled in individual species status assessments. That's definitely not true, and it's not an issue in this case. What we're asking the service to do and asking this court to order them to do is to publish the framework itself in the Federal Register as required by Section 4H, as we allege. And that's what distinguishes this case from individual species-specific decisions in which SSAs are made. Those documents contain the best available science for that decision, but we're concerned about the criteria by which those documents are made. It's like getting rulings from this court and we were to only receive the holding, but not know the standard of review, the rules of evidence, or the pleading standards. We need to know that kind of information beforehand, and that's exactly what Congress sought to do with Section 4H. Section 4H could have ordered the service simply to establish these guidelines and could have not imposed a specific disclosure requirement on them, but it asked them specifically to publish them in the Federal Register and take notice and comment on them, if I can quickly conclude. And Congress was also clear in the Endangered Species Act that that obligation is separate and apart from generalized notice and comment obligations. If you look to Section 16 U.S.C. 1533b-5, there's a catch-all provision that basically says, to the extent that the ESA doesn't have a specific disclosure obligation, then the APA's generalized notice and comment provisions apply. But Sections B and Sections H, and as the Court found in Friends of Animals, Section 10C do impose substantive disclosure provisions, which can be the basis for informational injury. Thank you, Your Honor. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Tatel, Rao